**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| CAMERON GALES, | 8:26-cv _____ |
| Plaintiff, | |
| vs. | COMPLAINT AND DEMAND FOR JURY TRIAL |
| CITY OF VALLEY, NEBRASKA; MELANIE HAYDEN, individually; JAKE LEWIS, individually; and LINDA LEWIS, individually, | |
| Defendants. | |

Plaintiff Cameron Gales, by and through undersigned counsel, for his Complaint against Defendants City of Valley, Nebraska, Melanie Hayden, Jake Lewis, and Linda Lewis, alleges and states as follows:

## I. NATURE OF THE ACTION

1.      This is a civil rights action arising from a coordinated campaign by three members of the Valley City Council to drive Plaintiff Cameron Gales, the City Administrator of the City of Valley, Nebraska, out of his position because of his race, in retaliation for his protected conduct, and without the process the Constitution, the City's own personnel rules, and Nebraska law require.

2.      Plaintiff is African American.

3.      At all relevant times, the only two senior officials in the City of Valley who were racial minorities were Plaintiff and the City's Chief of Police, Bobby Martinez.

4.      Both were targeted for removal by the same three Council Members, in the same period, through the same means, while no non-minority City official was subjected to comparable treatment.

5.       Defendants Melanie Hayden, Jake Lewis, and Linda Lewis took office as a new Council majority and, beginning in or about November 2024, deliberated in secret — outside of any lawfully noticed public meeting — regarding the removal of Plaintiff and Chief Martinez.

6.       In private text messages, one Defendant wrote: *"I want no on chief, admin and attorney,"* and *"Linda let's get rid of all three."*

7.       Another responded: *"I totally agree with you."*

8.       The City's personnel rules permitted dismissal only for cause, required fifteen days' advance written statement of reasons, and guaranteed any dismissed employee a hearing before the City Council.

9.       The Valley City Council also had no lawful power to remove the City Administrator of its own motion; Neb. Rev. Stat. § 17-107(2) conditions removal on the Mayor's initiation, and Mayor Cindy Grove never initiated Plaintiff's removal.

10.      Unable to remove Plaintiff lawfully, Defendants set out to accomplish by attrition what they could not accomplish by law, making Plaintiff's working conditions so intolerable that he was forced to resign — and thereby depriving him of the notice, statement of reasons, and Council hearing the rules guaranteed.

11.      Plaintiff brings claims under 42 U.S.C. §§ 1981, 1983, and 1985(3), Title VII of the Civil Rights Act of 1964, and Nebraska law, and seeks declaratory relief, compensatory and punitive damages, and attorneys' fees.

## II. JURISDICTION AND VENUE

12.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3)–(4), because Plaintiff asserts claims under 42 U.S.C. §§ 1981, 1983, and 1985(3) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

13.     This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy — the same course of conduct by the same Defendants concerning the same employment relationship.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). All Defendants reside in this District, and substantially all of the events giving rise to Plaintiff's claims occurred in Douglas County, Nebraska.

15.     This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

### III. PARTIES

16.     Plaintiff Cameron Gales is a natural person, a citizen of the State of Nebraska, and a resident of Douglas County, Nebraska. He served as City Administrator of the City of Valley from August 12, 2024 until August 16, 2025.

17.     Defendant City of Valley, Nebraska is a municipal corporation organized under the laws of the State of Nebraska and located in Douglas County, Nebraska. It is a "person" within the meaning of 42 U.S.C. § 1983.

18.     Upon information and belief, at all relevant times the City of Valley employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

19.     The City is therefore an "employer" within the meaning of 42 U.S.C. § 2000e(b).

20.     Defendant Melanie Hayden is a natural person and, at all relevant times, was a member of the Valley City Council.

21.     Defendant Melanie Hayden is sued in her individual capacity only.

22. Defendant Jake Lewis is a natural person and, at all relevant times, was a member of the Valley City Council.

23. Defendant Jake Lewi is sued in his individual capacity only.

24. Defendant Linda Lewis is a natural person and, at all relevant times, was a member of the Valley City Council.

25. Defendant Linda Lewis is sued in her individual capacity only.

26. Defendant Linda Lewis has served as Mayor of the City of Valley since November 2025

27. At all relevant times, Defendants Hayden, Jake Lewis, and Linda Lewis (the "Individual Defendants") acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Nebraska and the City of Valley.

## IV. ADMINISTRATIVE EXHAUSTION AND CONDITIONS PRECEDENT

28. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission, Charge No. 32E-2025-00588, on or about March 10, 2025. All discrete acts alleged herein occurring on or after May 14, 2024 fall within the applicable 300-day period.

29. The EEOC issued Plaintiff a Notice of Right to Sue dated May 11, 2026. Plaintiff received that Notice after its issuance.

30. This Complaint is filed within ninety (90) days of the date of the Notice itself, and therefore necessarily within ninety (90) days of Plaintiff's receipt of it.

31. Plaintiff has satisfied all conditions precedent to suit under Title VII.

32. The allegations of this Complaint, including Plaintiff's constructive discharge, which was the culmination of the discriminatory and retaliatory course of conduct described in the charge, are within the scope of Charge No. 32E-2025-00588, are reasonably related to and grow out of its

allegations, and were within the scope of the administrative investigation that could reasonably be expected to grow from it.

33.     On or about March 3, 2025, Plaintiff served a written Notice of Claim on the City of Valley and its City Clerk pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 13-901 to 13-928.

## V. FACTUAL ALLEGATIONS

### A.     Plaintiff's Appointment and the Terms of His Employment

34.     Plaintiff was appointed City Administrator of the City of Valley by written offer of employment dated July 25, 2024, which he accepted the same day, with a start date of August 12, 2024 and a starting annual salary of $115,000.

35.     As City Administrator, Plaintiff was the City's chief administrative officer, responsible for day-to-day operations, personnel administration, budget preparation, and implementation of Council policy.

36.     Plaintiff's written offer of employment expressly provided that his continued employment with the City was contingent upon his acceptance and execution of "all City policies and agreements," thereby incorporating into the terms of his employment the City of Valley Personnel Manual and the substantive protections it afforded.

37.     The offer of employment contained no disclaimer of contractual effect and no statement that Plaintiff's employment was terminable at will.

38.     At all times relevant to this action, the City of Valley maintained a written Personnel Manual governing the terms and conditions of employment of City employees, including Plaintiff.

39.     The Personnel Manual in effect before any amendment relevant to this action provided, in substance, that an employee may be dismissed only *for cause*; that dismissal requires

delivery of a written statement of the reasons to the employee at least fifteen (15) days before the effective date; that a suspension without pay pending discharge may be imposed only by the Mayor; and that any employee so dismissed *shall have the right to appeal in writing* within ten (10) days of receipt of the letter of dismissal and *shall be granted a hearing by the City Council.*

40.     The text of this provision appears in a photograph of the Manual transmitted by an Individual Defendant by text message in February 2025.

41.     These provisions substantively limited the grounds on which Plaintiff could be dismissed and conferred upon him a legitimate claim of entitlement to continued employment absent cause, together with a guaranteed right to notice, a statement of reasons, and a hearing before the City Council.

42.     The foregoing provisions were contained in the Personnel Manual as it existed *before* any amendment that Defendants attribute to Plaintiff. Plaintiff's entitlement to continued employment absent cause therefore does not depend on, and is not derived from, any revision to the Manual made during his tenure.

43.     Plaintiff completed any introductory or probationary period applicable to his position.

44.     Plaintiff commenced employment on August 12, 2024 and served continuously until August 16, 2025, more than one full year, thereby completing any one-year introductory period and attaining regular status with the full for-cause and hearing protections of the Personnel Manual before his constructive discharge.

45.     In the alternative, and pursuant to Fed. R. Civ. P. 8(d), Plaintiff's entitlement to those protections did not depend on completion of any introductory period, because neither the Manual's for-cause and hearing provisions nor the offer of employment incorporating them

conditioned those protections on completion of an introductory period, and no such condition was disclosed to Plaintiff.

46. In the alternative, and pursuant to Fed. R. Civ. P. 8(d), Plaintiff's entitlement to continued employment arose from the written offer of employment dated July 25, 2024 described above and its incorporation of the City's policies, and from the mutually explicit understandings arising out of the City's policies, practices, and assurances concerning the security of his position.

47. Throughout his tenure, Plaintiff performed his duties competently and met the City's legitimate expectations. Plaintiff received no formal or informal discipline at any time during his employment, and no performance concern was ever documented or communicated to him.

**B.      The New Council Majority and the Decision to Remove Plaintiff**

48. Following the November 2024 general election, Defendants Hayden, Jake Lewis, and Linda Lewis constituted a new voting bloc on the Valley City Council.

49. Beginning in or about November 2024, and continuing through December 2024 and January 2025, the Individual Defendants deliberated privately among themselves, outside of any lawfully convened and noticed public meeting, concerning the employment and removal of Plaintiff and Chief Martinez.

50. These private deliberations were conducted by text message and telephone and were designed to evade the notice, quorum, and public-participation requirements of the Nebraska Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 to 84-1414.

51. In those private communications, one Individual Defendant wrote: *"Then we just extend it. I want no on chief, admin and attorney."*

52. The same Defendant wrote: *"Linda let's get rid of all three."*

53. Another Individual Defendant responded: *"I totally agree with you."*

54.     The Individual Defendants' objective, removal of the Chief of Police and the City Administrator, was fixed before any charge, accusation, investigation, or hearing concerning either official's performance had been initiated, and before Plaintiff had been given notice of any deficiency in his performance.

55.     The Individual Defendants also monitored and sought to restrict Plaintiff's contacts with City staff and with Mayor Grove.

56.     In one such message, an Individual Defendant reported that an "office insider" had advised her of the Mayor's activity in Plaintiff's office and of an intention to limit Council members' access to City office staff.

57.     The Individual Defendants further discussed Plaintiff's administration of the City's personnel rules, including the introductory employment period and the disciplinary provisions applicable to Plaintiff and Chief Martinez, and exchanged photographs of the Manual's provisions as they existed before and after a revision.

### C.     The Campaign of Harassment

58.     Having resolved to remove Plaintiff, and lacking any lawful mechanism to do so, the Individual Defendants embarked on a sustained course of conduct designed to render Plaintiff's continued employment intolerable.

59.     In or about December 2024, Defendants Hayden and Linda Lewis, acting as individual Council members, sought to obtain non-public information about Chief Martinez outside of any lawful Council process.

60.     Defendant Hayden advised Plaintiff that the Council majority wanted a City employee removed.

61. When Plaintiff took steps to carry out that direction, including initiating a transition process, he was publicly criticized and humiliated at a Council meeting for doing what the Council majority had asked of him.

62. Plaintiff was repeatedly required to leave closed executive sessions convened to discuss personnel matters, notwithstanding that, as City Administrator, he was ordinarily entitled to attend.

63. When Plaintiff insisted that the City follow proper process for public-records requests, he was publicly disparaged as "slow."

64. On or about February 5, 2025, Defendant Hayden, writing on behalf of herself and Defendants Linda Lewis and Jake Lewis, formally demanded that three ordinances be placed on the February 11, 2025 Council agenda, including an ordinance styled the "City Administrator Accountability & Performance Standards Ordinance" and an ordinance styled the "Police Department Oversight Ordinance."

65. Those proposed ordinances were directed at Plaintiff's position and at Chief Martinez's position specifically, the positions held by the City's only two racial-minority senior officials, and were not directed at any comparable non-minority official.

66. The ordinances were never introduced or adopted. After Plaintiff and Chief Martinez, through counsel, served written notices of claim on the City in February and March 2025, the Individual Defendants abandoned the proposed ordinances.

67. Defendants' abandonment of the ordinances upon the assertion of legal claims is alleged as evidence of their knowledge of the unlawfulness of their course of conduct.

68. The same February 5, 2025 demand requested an executive session to discuss retaining separate counsel for Council members only, and a discussion of the "potential unauthorized disclosure of executive session information" by Mayor Grove and her attorney —

reflecting the Individual Defendants' effort to isolate Plaintiff and the Mayor from the Council's deliberations concerning Plaintiff's employment.

69.     In the same period, in a private text exchange between two Individual Defendants discussing City staffing and Plaintiff's salary, one Individual Defendant wrote of a prospective hire:

a.     *"This is a hard NO from me. Trying to get DEI crap out her. No way!!!!!"* — immediately clarifying, *"*here not her"*

70.     This text expresses open hostility to diversity, equity, and inclusion in City employment while the Individual Defendants were simultaneously pursuing the removal of the City's only two racial-minority senior officials.

71.     In the same text thread, one Individual Defendant wrote:

a.     *"I need her at that meeting! That's all we need to fire Martinez. Is first year as chief is NO TOLERANCE."*

b.     The other responded: *"Agree"* and *"Can you get her there?"*

72.     The Individual Defendants thus coordinated, in writing, a plan to remove the City's senior officials by invoking a purported first-year introductory period — the same theory their own retained legal opinion would later reject.

### **D.     The February 6, 2025 Meeting: Defendants Proceed with Notice**

73.     On February 6, 2025, at a public meeting of the Valley City Council attended by the Individual Defendants, an attorney experienced in employment-discrimination law, retained by Mayor Grove to render a legal opinion, presented a formal legal opinion on the Council's authority over the City's appointed officers.

74.     The attorney advised the Council, on the record, that:

a.     removal of City officers may be initiated only by the Mayor, and removal accomplished in any other way "would be illegal" and ultra vires;

b.  removing Plaintiff or Chief Martinez would violate due process and "set up a discrimination action," exposing the City to liability, attorneys' fees, and an order of reinstatement with back pay;

c.  Plaintiff and Chief Martinez "are minorities";

d.  no probationary or introductory period had ever been imposed on Plaintiff or Chief Martinez — "I've seen nothing that does that", and the civil-service probation statute invoked by Defendant Hayden does not apply to their positions; and

e.  as the Personnel Manual is currently written, the City of Valley "has waived its right to at will employment" and persons may be discharged only for specific causes set out in the Manual.

75.  At the same meeting, Defendant Hayden questioned the attorney regarding whether the "introductory outline in the personnel manual" would permit the Council to withhold consent to the officers' appointments "without exposing the city to the liability," and what liabilities the City would face if the Council withheld consent during a claimed introductory period — seeking, after the Council had been advised that no lawful removal path existed, a legal mechanism to accomplish the removal nonetheless.

76.  These inquiries are alleged as evidence of the Individual Defendants' knowledge, intent, and continuing agreement, not as an independent basis of liability.

77.  Also at the February 6, 2025 meeting, Mayor Grove stated publicly that the Council's conduct had "caused a significant impact to our community as a whole, by decreasing the morale, productivity and well being of our employees," and that employees had "been faced with very unnecessary uncertainty of continued employment."

78.    Notwithstanding this notice, the Individual Defendants persisted in their campaign against Plaintiff.

79.    Their subsequent conduct, including the continued exclusion of Plaintiff from executive sessions, continued public disparagement, and the eventual open notification that Plaintiff would be terminated, was undertaken with actual knowledge that it was unlawful, in deliberate indifference to and reckless disregard of Plaintiff's federally protected rights.

**E.    Plaintiff Learns of Defendants' Secret Communications While Still Employed**

80.    On March 4, 2025, Plaintiff, through counsel, submitted a public records request to the City pursuant to Neb. Rev. Stat. §§ 84-712 to 84-712.09, seeking, among other things, all communications between the Individual Defendants concerning Plaintiff and Chief Martinez from October 1, 2024 forward.

81.    In or about late March 2025, the City produced records responsive to that request, including the Individual Defendants' text-message communications alleged above.

82.    From that production, while still employed as City Administrator, Plaintiff read and learned the content of the Individual Defendants' private communications, including the agreement to "get rid of all three" and the statement disparaging "DEI", and thereby learned that the officials who governed his employment had secretly agreed to force him out and harbored hostility toward diversity in City employment.

83.    For the remainder of his employment, approximately four and one-half months, from late March 2025 until August 16, 2025, Plaintiff performed his duties with the knowledge of what his governing body had written about him, while the campaign against him continued.

84.     That knowledge, together with Defendants' continuing conduct, rendered Plaintiff's working environment hostile, abusive, and intolerable.

85.     Defendants' conduct was not directed at similarly situated non-minority City officials, who were not subjected to comparable public criticism, targeted ordinances, records demands, or coordinated efforts to secure their removal.

### F.     Plaintiff's Protected Conduct

86.     On more than one occasion during his employment, and before his constructive discharge, Plaintiff complained directly to Mayor Grove that he felt he was being discriminated against by the Council majority, and that the Council members' demands and conduct toward him were improper.

87.     Plaintiff further reported to Mayor Grove and others his belief that he and Chief Martinez, the City's only two racial-minority senior officials, were being targeted, particularly after the Council majority refused to confirm his appointments.

88.     Mayor Grove informed Plaintiff that she had communicated his concerns and complaints to the City Council.

89.     The Individual Defendants therefore had actual knowledge of Plaintiff's complaints of discrimination.

90.     Plaintiff's opposition to the Council majority's conduct, and his refusal to comply with directions he believed unlawful or discriminatory, were likewise known to the Individual Defendants.

91.     Following that opposition and those complaints, the Individual Defendants intensified their campaign against him, culminating in his constructive discharge.

92.     At a public Council meeting in or about February 2025, the discrimination against Plaintiff was raised publicly on the record.

93.     Following an open-records request and ensuing coverage in the local newspaper, Plaintiff was for the first time openly notified that he would be terminated.

**G.      Constructive Discharge**

94.     By reason of Defendants' conduct, Plaintiff's working conditions became so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

95.     Defendants intended to force Plaintiff's resignation, or in the alternative, Plaintiff's resignation was a reasonably foreseeable consequence of the conditions Defendants deliberately created. Defendants' own contemporaneous statements, including *"Linda let's get rid of all three"*, establish that forcing Plaintiff out was the object of their conduct, not an incidental effect of it.

96.     Plaintiff faced conditions no reasonable person should be expected to endure, and he knew from Defendants' own written words that the officials who governed his employment had already agreed to force him out.

97.     Plaintiff did what any reasonable employee in his position would do: he sought other employment while continuing to perform his duties.

98.     On August 16, 2025, having completed more than one full year of continuous service, Plaintiff resigned his position as City Administrator upon securing employment with the City of Carter Lake, Iowa.

99.     Plaintiff's resignation was not voluntary; it was the culmination of Defendants' campaign to force him from office, and it was a constructive discharge.

100.    That Plaintiff mitigated his damages by securing other employment before resigning does not diminish the involuntariness of his departure; it reflects the ordinary prudence of a reasonable person compelled to leave.

101.    By forcing Plaintiff's resignation rather than proceeding to dismiss him, Defendants deprived Plaintiff of every procedural protection the Personnel Manual guaranteed: he received no

written statement of the reasons for his removal, no fifteen days' advance notice, and no hearing before the City Council.

102.    Immediately following Plaintiff's constructive discharge, Mayor Grove hired a white male as a manager for the City, but did not appoint him to the office of City Administrator.

103.    In November 2025, following a recall election that removed Mayor Grove from office, Defendant Linda Lewis took office as Mayor of the City of Valley, a term running until December 2028.

104.    Thereafter, Defendant Linda Lewis promoted the white male to the office of City Administrator, the position from which Plaintiff had been driven, thereby placing a white male in Plaintiff's former position.

### H.    Stigmatizing Statements

105.    In connection with and contemporaneous with Plaintiff's constructive discharge, Defendants publicly impugned Plaintiff's honesty, integrity, and professional competence.

106.    Among other things, Defendant Hayden reached out to members of the community in an effort to gather derogatory information about Plaintiff and circulated a false statement that multiple attorneys from Omaha had advised the Mayor not to hire Plaintiff.

107.    Plaintiff was also publicly disparaged as "slow" in the performance of his duties.

108.    Those statements were false, were published, and were made in the course of and in connection with the termination of Plaintiff's employment.

109.    The City afforded Plaintiff no name-clearing hearing, and none was offered or made available.

### I.    Damages

110. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer lost wages, lost benefits, lost future earning capacity, and damage to his professional reputation.

111. Plaintiff has further suffered, and continues to suffer, substantial emotional distress, mental anguish, humiliation, embarrassment, anxiety, and loss of enjoyment of life as a direct and proximate result of Defendants' conduct. Plaintiff seeks compensatory damages for that emotional harm on each of his claims under 42 U.S.C. §§ 1981 and 1983 and Title VII, as authorized by 42 U.S.C. § 1981a and governing law.

## VI. CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983 — Procedural Due Process (Property Interest)
### (Against the Individual Defendants)

112. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

113. Plaintiff had a constitutionally protected property interest in his continued employment as City Administrator.

114. That interest arose from the City of Valley Personnel Manual, which permitted dismissal only for cause, required a written statement of reasons delivered at least fifteen days in advance, and guaranteed a hearing before the City Council upon written appeal.

115. Those provisions substantively limited the grounds for dismissal and conferred a legitimate claim of entitlement to continued employment.

116. In the alternative, and pursuant to Fed. R. Civ. P. 8(d), that interest arose from Plaintiff's written offer of employment and its incorporation of the City's policies, and from the mutually explicit understandings arising out of the City's policies, practices, and assurances.

117.    Neb. Rev. Stat. § 17-107(2), which conditions removal of the City Administrator upon the Mayor's initiation, is pleaded not as the source of Plaintiff's entitlement but as a measure of the process that was constitutionally and statutorily due before that entitlement could be extinguished.

118.    Plaintiff was deprived of that property interest when Defendants constructively discharged him.

119.    Defendants deprived Plaintiff of that interest without any of the process guaranteed to him: without a written statement of the grounds for his removal, without fifteen days' advance notice, without the Mayor's initiation required by statute, and without any hearing before or after the deprivation.

120.    Plaintiff did not waive or forfeit the process due to him.

121.    The appeal procedure provided by the Personnel Manual was illusory as applied to Plaintiff: the body designated to hear any appeal was the City Council, three of whose members had already agreed among themselves to secure Plaintiff's removal before any charge, investigation, or notice of deficiency existed.

122.    Resort to that procedure would have been futile, and a hearing before decisionmakers who had prejudged the outcome would not have afforded the impartial process the Constitution requires.

123.    The deprivation of Plaintiff's protected interest was effected by officials vested with final authority over the terms and conditions of the City Administrator's employment, and was a foreseeable consequence of their considered and deliberate decisions — not the result of random or unpredictable conduct by subordinate employees.

124.    A meaningful pre-deprivation hearing was therefore both practicable and constitutionally required, and the post-deprivation remedies available under Nebraska law are inadequate to redress the deprivation.

125.    This allegation is pleaded in the alternative to Plaintiff's allegations that Defendants exceeded their lawful authority, pursuant to Fed. R. Civ. P. 8(d).

126.    As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

### COUNT II
### 42 U.S.C. § 1983 — Deprivation of Liberty Interest (Stigma-Plus)
**(Against the Individual Defendants and the City of Valley)**

127.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

128.    This Count is pleaded independently of Count I and does not depend on the existence of a property interest in continued employment.

129.    Defendants made false public statements that impugned Plaintiff's honesty, integrity, and professional reputation, and that foreclosed his freedom to take advantage of other employment opportunities.

130.    Those statements were made in connection with, and contemporaneous with, the termination of Plaintiff's employment.

131.    The stigmatizing statements were made by officials possessing final policymaking authority for the City, and/or were ratified by the City.

132.    The City, as Plaintiff's employer, was the only entity able to afford Plaintiff a name-clearing hearing, and it afforded him none.

133.    The City is therefore a necessary defendant to this Count, and is liable for the deprivation of Plaintiff's liberty interest through the acts of its final policymakers, its ratification, and its failure to provide any name-clearing process.

134. Plaintiff was afforded no name-clearing hearing before or after the statements were published.

135. Defendants thereby deprived Plaintiff of a liberty interest protected by the Fourteenth Amendment without due process of law, causing damages as alleged herein.

## COUNT III
### 42 U.S.C. § 1983 — Equal Protection
### (Against the Individual Defendants and the City of Valley)

136. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

137. The Individual Defendants, acting under color of state law, intentionally discriminated against Plaintiff in the terms and conditions of his employment, and in securing his removal from office, because of his race.

138. Plaintiff and Chief Martinez were the only two racial-minority senior officials in the City of Valley. Both, and only they, were targeted for removal by the same three Council Members, in the same period, and through the same means, while no non-minority official was subjected to comparable public criticism, targeted ordinances, or coordinated efforts to secure removal.

139. Contemporaneously, an Individual Defendant privately disparaged "DEI" in City employment.

140. Defendants' conduct was purposeful and race-based.

141. Plaintiff was subsequently replaced in the office of City Administrator by a white male, promoted to that office by Defendant Linda Lewis.

142. The Individual Defendants continued their discriminatory course of conduct after being expressly advised, on February 6, 2025, that removing Plaintiff would be illegal and would constitute actionable discrimination.

143. Their conduct was undertaken with actual knowledge of, and reckless indifference to, Plaintiff's federally protected rights, warranting an award of punitive damages.

144. The City of Valley is liable on this Count under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the Individual Defendants, as members of the City Council, possessed final policymaking authority with respect to the matters alleged, and/or because the City ratified their conduct.

145. This allegation is pleaded in the alternative to Plaintiff's ultra vires allegations, pursuant to Fed. R. Civ. P. 8(d).

146. As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## COUNT IV
### 42 U.S.C. § 1985(3) — Conspiracy to Deprive Equal Protection
(Against the Individual Defendants)

147. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein

148. The Individual Defendants agreed and conspired among themselves to deprive Plaintiff of the equal protection of the laws and of equal privileges and immunities under the laws.

149. The conspiracy was motivated by racial, invidiously discriminatory animus, as required by Griffin v. Breckenridge, 403 U.S. 88 (1971).

150. The only two officials the Individual Defendants conspired to remove were the City's only two racial-minority senior officials; no non-minority official was targeted.

151. In the same private communications in which the conspiracy was formed and pursued, an Individual Defendant expressed open hostility to diversity, equity, and inclusion in City

employment, and two Individual Defendants coordinated in writing a plan to "fire" the Chief of Police under a purported first-year no-tolerance theory.

152.    The Individual Defendants persisted in the conspiracy after being expressly advised on February 6, 2025 that Plaintiff and Chief Martinez are minorities and that removing them would constitute actionable discrimination.

153.    In furtherance of the conspiracy, the Individual Defendants committed overt acts, including conducting secret deliberations concerning Plaintiff's removal in November 2024, December 2024, and January 2025; agreeing among themselves to vote against Plaintiff's continued employment; engaging in the course of harassment alleged above; and creating the conditions that compelled Plaintiff's resignation.

154.    The Individual Defendants' February 5, 2025 demand for targeted ordinances, and their abandonment of those ordinances upon the service of notices of claim, are alleged as evidence of the existence, object, and knowing character of the conspiracy, not as an independent basis of liability.

155.    The intracorporate conspiracy doctrine does not bar this Count.

156.    The Individual Defendants acted outside the scope of their lawful authority and for personal reasons of their own, and each had an independent personal stake in the outcome of the conspiracy.

157.    This allegation is pleaded in the alternative to Plaintiff's allegations that Defendants possessed and exercised final policymaking authority, pursuant to Fed. R. Civ. P. 8(d).

158.    As a direct and proximate result, Plaintiff was injured in his person and property and deprived of rights and privileges as a citizen of the United States.

**COUNT V**
**42 U.S.C. § 1983 — Civil Conspiracy**
**(Against the Individual Defendants)**

159. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

160. This Count is pleaded in the alternative to Count IV, pursuant to Fed. R. Civ. P. 8(d), and does not require proof of class-based invidious discriminatory animus.

161. The Individual Defendants reached a meeting of the minds and agreed among themselves to deprive Plaintiff of rights secured by the Constitution, including the rights asserted in Counts I, II, and III.

162. The Individual Defendants committed overt acts in furtherance of that agreement, as alleged above, and those acts caused the deprivation of Plaintiff's constitutional rights.

163. The intracorporate conspiracy doctrine does not bar this Count.

164. The Individual Defendants acted outside the scope of their lawful authority and for personal reasons of their own, and each had an independent personal stake in the outcome of the conspiracy.

165. This allegation is pleaded in the alternative to Plaintiff's allegations that Defendants possessed and exercised final policymaking authority, pursuant to Fed. R. Civ. P. 8(d).

166. As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## COUNT VI
### 42 U.S.C. § 1983 — Municipal Liability (Monell)
### (Against the City of Valley)

167. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

168. This Count asserts the City of Valley's liability for the constitutional deprivations alleged in Counts I, II, and III.

169.     The Individual Defendants, acting as members of the Valley City Council, possessed final policymaking authority for the City of Valley with respect to the employment of the City Administrator and the matters alleged herein.

170.     In the alternative, the City of Valley ratified the Individual Defendants' conduct by acquiescing in it, by taking no action to prevent or remedy it, and by accepting its results.

171.     In the further alternative, the City of Valley maintained a custom or practice of conducting employment deliberations outside of lawfully noticed public meetings, and of permitting Council members to direct the removal of appointed officials without the process required by the Personnel Manual and Neb. Rev. Stat. § 17-107(2).

172.     These theories are pleaded in the alternative to Plaintiff's allegations that the Individual Defendants exceeded their lawful authority, pursuant to Fed. R. Civ. P. 8(d).

173.     The City's policy, custom, ratification, and/or the acts of its final policymakers were the moving force behind the violation of Plaintiff's constitutional rights, causing damages as alleged herein.

## COUNT VII
### 42 U.S.C. § 1981, enforced through 42 U.S.C. § 1983 —
### Interference with the Right to Make and Enforce Contracts
### (Against the Individual Defendants and the City of Valley)

174.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

175.     Plaintiff is African American and a member of a race protected by 42 U.S.C. § 1981.

176.     Plaintiff had an existing contractual employment relationship with the City of Valley within the meaning of 42 U.S.C. § 1981, and was entitled to the enforcement, performance, and enjoyment of all of its benefits, privileges, terms, and conditions, and to be free from its racially motivated termination.

177.    Defendants, on account of Plaintiff's race, intentionally interfered with and impaired that existing contractual relationship, and caused its termination, depriving Plaintiff of its benefits, privileges, terms, and conditions.

178.    Because Defendants are state actors, Plaintiff asserts his § 1981 rights against them through 42 U.S.C. § 1983, which provides the exclusive federal remedy against state actors for violation of rights guaranteed by § 1981. See Jett v. Dallas Independent School District, 491 U.S. 701 (1989).

179.    As to Defendant City of Valley, the violation was caused by the decisions of officials possessing final policymaking authority over the employment of the City Administrator, by the City's ratification of those decisions, and/or by a municipal custom or practice, and the City is therefore liable under Monell v. Department of Social Services, 436 U.S. 658 (1978).

180.    As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

### COUNT VIII
### Title VII — Disparate Treatment on the Basis of Race
### (Against the City of Valley)

181.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

182.    Plaintiff is African American and a member of a class protected by Title VII.

183.    Plaintiff was qualified for his position and met the City's legitimate expectations.

184.    Plaintiff suffered an adverse employment action in that he was constructively discharged from his position as City Administrator.

185.    Plaintiff and Chief Martinez were the City's only two racial-minority senior officials.

186.    Both were singled out for removal by the same three Council Members through the same means, and no similarly situated non-minority official was treated in the same manner.

187.    Contemporaneously, an Individual Defendant disparaged "DEI" in City employment, and the Individual Defendants persisted after being advised on February 6, 2025 that removing Plaintiff would constitute actionable discrimination.

188.    The City's stated reasons for its treatment of Plaintiff, if any, are pretextual.

189.    The Individual Defendants resolved to remove Plaintiff before any performance concern had been documented, investigated, or communicated to him.

190.    Plaintiff was subsequently replaced in the office of City Administrator by a white male, promoted to that office by Defendant Linda Lewis.

191.    As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## COUNT IX
### Title VII — Hostile Work Environment
### (Against the City of Valley)

192.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

193.    Plaintiff was subjected to unwelcome harassment based on his race. Considered in their totality, the conditions of Plaintiff's employment included: a sustained campaign of public criticism, disparagement, and exclusion directed at Plaintiff and at the City's only other racial-minority senior official, and at no one else; targeted ordinances aimed at their two positions; and — from late March 2025 forward — Plaintiff's knowledge, acquired while still employed through the City's own records production, that the officials who governed his employment had secretly agreed in writing to "get rid of" him and harbored open hostility to diversity in City employment.

194.    Plaintiff's contemporaneous awareness of the Individual Defendants' communications altered the conditions of his employment: for approximately four and one-half months, Plaintiff performed his duties knowing what his governing body had written about him, while the campaign against him continued.

195.    Mayor Grove publicly acknowledged, on February 6, 2025, that the Council's conduct had decreased the morale, productivity, and well-being of City employees and subjected employees to unnecessary uncertainty of continued employment.

196.    The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create an abusive working environment, and Plaintiff subjectively perceived it as such.

197.    The harassment was committed by members of the City Council, who possessed immediate or successively higher authority over Plaintiff and over the terms and conditions of his employment.

198.    The City is therefore vicariously liable for their conduct, which culminated in a tangible employment action.

199.    In the alternative, and pursuant to Fed. R. Civ. P. 8(d), the City knew or should have known of the harassment and failed to take prompt and effective remedial action.

200.    As a direct and proximate result, Plaintiff has suffered damages as alleged herein.


### COUNT X
### Title VII — Retaliation
### (Against the City of Valley)

201.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

202.    Plaintiff engaged in activity protected by Title VII by opposing practices he reasonably and in good faith believed to be unlawful discrimination: on multiple occasions before his constructive discharge, Plaintiff complained to Mayor Grove that he was being discriminated against by the Council majority and that he and Chief Martinez were being targeted as the City's only two racial-minority senior officials.

203.    Defendants knew of Plaintiff's protected activity. Mayor Grove informed Plaintiff that she had communicated his concerns and complaints to the City Council, and the Individual Defendants were separately advised on February 6, 2025 that discrimination had been raised concerning Plaintiff and Chief Martinez.

204.    Following and because of that protected activity, the City, acting through the Individual Defendants, subjected Plaintiff to materially adverse action that would dissuade a reasonable employee from making or supporting a charge of discrimination, culminating in his constructive discharge.

205.    A causal connection exists between Plaintiff's protected activity and the adverse action, established by the temporal proximity between them and by Defendants' contemporaneous statements.

206.    As a direct and proximate result, Plaintiff has suffered damages as alleged herein.

## COUNT XI
### Declaratory Judgment and Equitable Relief.
### (Against the City of Valley)

207.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

208.    An actual and justiciable controversy exists between Plaintiff and the City of Valley concerning the lawfulness and validity of the actions taken to remove Plaintiff from the office of City Administrator.

209.    The Individual Defendants effected Plaintiff's removal in substance.

210.    By agreeing among themselves to secure his departure, by creating conditions calculated to compel his resignation, and by depriving him of the notice, statement of reasons, and Council hearing the Personnel Manual guaranteed, they accomplished a de facto removal of the City Administrator.

211.    Neb. Rev. Stat. § 17-107(2) conditions the removal of the City Administrator upon the Mayor's initiation. Mayor Grove did not initiate Plaintiff's removal.

212.    The Council's de facto removal of Plaintiff was therefore ultra vires, void, and of no legal effect.

213.    Plaintiff is entitled to a declaration to that effect and to an award of front pay in lieu of reinstatement.

214.    The City Council adopted no formal action removing Plaintiff, and the targeted ordinances demanded on February 5, 2025 were never introduced or adopted.

215.    There is accordingly no formal Council action for the Court to void; Plaintiff's removal was accomplished entirely through the de facto means alleged above.

216.    The Individual Defendants' deliberations concerning Plaintiff's employment were nonetheless conducted in violation of the Nebraska Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 to 84-1414 — without notice, outside any lawfully convened meeting, and hidden from public view — and that unlawful secrecy is alleged as evidence of the manner, purpose, and unlawfulness of Defendants' conduct.

217.    Plaintiff does not assert the Nebraska Open Meetings Act as an independent cause of action for damages; it is pleaded as a ground for declaratory and equitable relief and as evidence of Defendants' conduct and intent.

218.    Plaintiff is entitled to a declaration that the City's actions with respect to his employment were unlawful and void.

219.    Plaintiff does not seek reinstatement; he seeks an award of front pay in lieu of reinstatement.

220.    Reinstatement is in any event infeasible: Defendant Linda Lewis now holds the office of Mayor of the City of Valley.

## COUNT XII
### Breach of Contract
### (Against the City of Valley)

221. Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

222. Plaintiff and the City of Valley were parties to a valid and enforceable employment contract, formed by the City's written offer of employment dated July 25, 2024 and Plaintiff's acceptance the same day, supported by consideration.

223. That contract expressly incorporated "all City policies and agreements," including the provisions of the City of Valley Personnel Manual governing dismissal for cause, advance written notice of reasons, and the right to a hearing before the City Council.

224. Plaintiff performed all conditions, covenants, and promises required of him under the contract.

225. The City breached the contract by constructively discharging Plaintiff without cause and without following the procedures required by the Personnel Manual and by Neb. Rev. Stat. § 17-107(2).

226. As a direct and proximate result of the City's breach, Plaintiff has suffered damages, including lost wages and benefits.

### PRAYER FOR RELIEF

227. WHEREFORE, Plaintiff Cameron Gales respectfully prays that this Court:

   a. Declare that Defendants' conduct violated Plaintiff's rights under the United States Constitution, 42 U.S.C. §§ 1981, 1983, and 1985(3), Title VII, and Nebraska law;

   b. Declare that the Council's de facto removal of Plaintiff was ultra vires, void, and of no legal effect;

c.  Award Plaintiff front pay in lieu of reinstatement, and grant such further injunctive relief as is necessary to remedy the violations alleged;

d.  Award Plaintiff back pay, lost benefits, and prejudgment interest;

e.  Award Plaintiff compensatory damages for emotional distress, humiliation, and damage to his professional reputation;

f.  Award Plaintiff punitive damages against the Individual Defendants on his federal claims under 42 U.S.C. §§ 1981, 1983, and 1985(3);

g.  Award Plaintiff his reasonable attorneys' fees, expert fees, and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

h.  Grant such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

228.  Plaintiff demands a trial by jury on all issues so triable.

Dated: August 7, 2026.

Respectfully submitted,

CAMERON GALES, Plaintiff

By: /s/ Justin T. Wayne
Justin T. Wayne, #23310
WAYNE LAW, LLC
PO Box 265
Omaha, NE 68102
Ph: (402) 933-6603
Fax: (402) 833-7128
justin@justinwaynelaw.com
Attorney for Plaintiff